UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOHN E. MERRILL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:20 CV 836 DDN |
| | ) |
| KILOLO KIJAKAZI,[1] | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM

This action is before the Court for judicial review of the final decision of the defendant Commissioner of Social Security denying the application of plaintiff John E. Merrill for supplemental security income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. § 1601, *et seq*. The parties have consented to the exercise of plenary authority by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

For the reasons set forth below, the decision of the Commissioner is affirmed.

## I.  BACKGROUND

Plaintiff was born on January 10, 1984.  He protectively filed his application for SSI on December 4, 2017.  (Tr. 11, 197.)  He alleged disability based on multiple herniated discs, morbid obesity, bipolar disorder, anxiety, and suicidality.  (Tr. 218.)  Plaintiff's initial application was denied on January 31, 2018.  (Tr. 127.)  Plaintiff appealed the decision and requested a hearing by an administrative law judge ("ALJ").  (Tr. 134.)

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Kilolo Kijakazi is substituted for Andrew Saul as defendant in this action. No further action is needed for this action to continue. See 42 U.S.C. § 405(g) (last sentence).

On May 13, 2019, plaintiff appeared at a hearing before an ALJ. (Tr. 26-52.) Plaintiff's father and a vocational expert ("VE") also testified at the hearing. (*Id*.) On August 30, 2019, the ALJ denied plaintiff's application. (Tr. 11-20.) The Appeals Council denied plaintiff's request for review. (Tr. 1.) As a result, the ALJ's decision stands as the final decision of the Commissioner. 20 C.F.R. § 416.1481. The case is now before this Court for review.

## II.  MEDICAL AND OTHER HISTORY

The following is a summary of plaintiff's medical and other history relevant to his appeal.

An MRI of plaintiff's lumbar spine on October 7, 2016, revealed mild disc desiccation with focal annular fissures and small central protrusions at L3-4 and L4-5; disc space height and signal were otherwise relatively preserved. (Tr. 361.)

On October 25, 2016, plaintiff saw Jason Hahn, M.D., who specializes in pain management. (Tr. 358.) Plaintiff reported persistent and worsening low back pain, which he described as a sharp stabbing sensation localized to the low back; his pain score was 4/10. (*Id*.) His pain worsened with prolonged standing and walking, and it was relieved with sitting and resting. (*Id*.) His review of symptoms was negative for anxiety or depressive symptoms. (Tr. 359.) Plaintiff exhibited generalized reduced range of motion of all four extremities without pain, moderate range of motion in the lumbar region with pain, and tenderness in the mid-lumbar region with palpation. (Tr. 360.) Dr. Hahn noted that the October 7 MRI demonstrated tiny protrusions/annular tears which are likely incidental findings and not contributing much to plaintiff's symptoms. (Tr. 362.) Rather, Dr. Hahn said that plaintiff's pain was caused by plaintiff's obesity, causing stress at his lordotic lumbar curvature and facetogenic pain.[2] (*Id*.) Dr. Hahn prescribed bilateral L3-4 and L4-5 facet injections, but he noted that operative options regarding weight loss would

---

[2] Facetogenic pain is the result of repetitive stress and/or cumulative low-level trauma, leading to inflammation and stretching of the joint capsule. Maarten van Kleef, et al., *12. Pain originating from the lumbar facet joints*, 10 PAIN PRAC. 459, 459 (2010).

ultimately be plaintiff's best chance of prolonged success. (*Id*.) Plaintiff's medications included Tramadol for pain, Wellbutrin, Zoloft, Depakote, and Seroquel. (Tr. 359.)

On November 8, 2016, plaintiff saw Malik Ahmed, M.D., psychiatrist. Plaintiff told Dr. Ahmed that he was going to Harmony House[3] two times per week. (Tr. 355.) He also stated that he was keeping up with his chores and showering every other day. (*Id*.)

On November 10, 2016, plaintiff saw Gina Mohart, M.D., family medicine, who diagnosed him with pain of the lumbar facet joint and a herniated nucleus pulposus[4] of the lumbosacral region. (Tr. 355.) Dr. Mohart prescribed Norco for plaintiff's pain. (*Id*.) Plaintiff's review of systems was positive for myalgias, back pain, arthralgias, and neck pain, as well as sleep disturbance. (Tr. 354-55.)

On December 6, 2016, plaintiff underwent bilateral L3-4 and L4-5 facet injections, administered by Dr. Hahn. (Tr. 353.) His pain score was 6-7/10. (Tr. 352.)

On February 7, 2017, Malik Ahmed, M.D., psychiatrist, noted that plaintiff was depressed and nervous, with moderate feelings of worthlessness and no suicidal ideation. (Tr. 350.) He diagnosed bipolar disorder with severe depression, and he prescribed Wellbutrin, Depakote, Seroquel and Zoloft. (*Id*.)

On April 4, 2017, plaintiff told Dr. Ahmed that he was going to Harmony House on to two times per week. (Tr. 347.) Dr. Ahmed noted that plaintiff's mood was depressed and nervous, with decreased concentration and an anxious affect. (Tr. 348.) Dr. Ahmed again diagnosed bipolar disorder with severe depression and continued plaintiff's prescriptions for Wellbutrin, Depakote, Seroquel and Zoloft. (*Id*.)

On May 12, 2017, plaintiff returned to Dr. Hahn with complaints of low back pain and a pain score of 6/10. (Tr. 345.) Plaintiff reported 100% pain relief for 3.5 months from the facet injections, followed by the return of similar pain. (*Id*.) Dr. Hahn diagnosed

---

[3] Plaintiff testified in his ALJ hearing that Harmony House is a club house for people with disabilities that helps them gain work skills. (Tr. 39.)

[4] Herniated nucleus pulposus is a condition in which part or all of the soft central portion of an intervertebral disk is forced through a weakened part of the disk, resulting in back pain and nerve root irritation. https://medlineplus.gov/ency/imagepages/9700.htm.

lumbar spondylosis[5] without myelopathy or radiculopathy.[6] (Tr. 346.) Plaintiff again underwent bilateral L3-4 and L4-5 facet injections, administered by Dr. Hahn. (Tr. 347.)

On June 6, 2017, Dr. Ahmed noted that plaintiff exhibited restlessness and a depressed and nervous mood, with moderate feelings of worthlessness and guilt. (Tr. 344.) Plaintiff reported that he was going to Harmony House two times per week. (Tr. 343.)

On October 21, 2017, plaintiff saw Georgia Jones, M.D., psychiatrist, for medication management. (Tr. 342.) Dr. Jones indicated that plaintiff's medical comorbidities were well-controlled and not impacting mental health and/or response to treatment. (*Id.*) She noted that plaintiff's intelligence was average, and he had a stable sense of well-being and self-esteem. (*Id.*) She observed that plaintiff had a strong body odor, but he wore clean clothes, made good eye contact, and exhibited pleasant and cooperative behavior. (*Id.*)

On January 25, 2018, Yasuo Ishida, M.D., performed a consultative exam. (Tr. 530-36.) Plaintiff reported that he does some housework, including grocery shopping, simple cooking, and laundry. (Tr. 531.) He indicated that he can walk four or five miles, stand for two hours, sit "forever," climb one flight of stairs, squat some, and bend. (*Id.*) Dr. Ishida noted that when plaintiff stands, an apron of fat hangs down. (*Id.*) Plaintiff exhibited tenderness in the midline lumbar area and full range of motion in his extremities. (Tr. 532.) He also exhibited a slow, waddling gait. (*Id.*) He could cross his knees with difficulty, bend over to put on socks and tie shoelaces, get on and off the examining table without difficulty, move around the room, and squat. (*Id.*) Dr. Ishida diagnosed plaintiff with low back pain and morbid obesity. (*Id.*)

---

[5] Lumbar spondylosis is age-related change of the vertebrae and discs of the spine. https://www.uofmhealth.org/health-library/abr8401.

[6] Myelopathy is an injury to the spinal cord due to severe compression that may result from trauma, congenital stenosis, degenerative disease, or disc herniation. Radiculopathy is pinching of the nerve roots as they exit the spinal cord or cross the intervertebral disc, rather than the compression of the cord itself.
https://www.hopkinsmedicine.org/health/conditions-and-diseases/myelopathy.

Also on January 25, 2018, Stone Kraushaar, Psy.D., performed a consultative examination. (Tr. 539-42.) Dr. Kraushaar noted that plaintiff was not well groomed, and there was a strong smell of body odor. (Tr. 541.) Plaintiff exhibited a flat affect and depressed mood. (*Id*.) He was able to repeat three out of six digits and had some confusion in proverb interpretation. (*Id*.) Otherwise, plaintiff showed no deficits in orientation, memory, calculation, or finding similarities and differences. (*Id*.) Dr. Kraushaar found that plaintiff had a moderate impairment in his ability to understand, remember, or apply information, noting plaintiff's difficulty recalling information immediately after hearing it or learning it. (Tr. 542.) Dr. Kraushaar also found that plaintiff had a moderate impairment in his ability to interact with others, noting that he generally avoids people and group settings due to anxiety. (*Id*.) Dr. Kraushaar found that plaintiff has a marked impairment in his ability to adapt and manage himself. (*Id*.) Plaintiff is generally able to care for his basic needs about 20% of the time; he only bathes when he needs to leave the home, which is not often, he cleans occasionally but struggles with the motivation to do so, and he does not cook for himself. (*Id*.) He experiences significant difficulties with sleep. (*Id*.) He takes some pleasure in video games, no longer has friends, and does not engage in activities outside of the home. (*Id*.) He experiences anhedonia and apathy. (*Id*.) Dr. Kraushaar diagnosed plaintiff with bipolar disorder with severe depression, anxiety, and ADHD, with a prognosis of fair to poor. (*Id*.)

On January 30, 2018, Paul Spence, M.D., a medical consultant retained by defendant, reviewed the available evidence to determine plaintiff's physical RFC. (Tr. 118.) Dr. Spence determined that plaintiff could perform light work. (Tr. 122.) He found that plaintiff's reports were partially consistent with the medical record. (Tr. 116.) He found that stooping, ladders, scaffolds, and ropes should be completely limited due to plaintiff's disc desiccation with focal annular fissures, small central protrusions at L3-4 and L4-5, and lumbar spondylosis. (Tr. 117.) He recommended that even moderate exposure to heights and machinery should be avoided. (Tr. 118.) He also found that ramps and stairs should be limited due to pain. (Tr. 117.)

Also on January 30, 2018, J. Edd Bucklew, Ph.D., a psychological consultant retained by defendant, reviewed the available evidence to determine plaintiff's mental RFC. (Tr. 118.) Dr. Bucklew determined that plaintiff is moderately limited in his ability to understand and remember detailed instructions, interact with others, and adapt. (Tr. 119-20.) Dr. Bucklew found that plaintiff is limited to persisting with less complex instruction and is able to complete tasks with fixed instructions that would not require frequent or prolonged interactions with others. (Tr. 120.) While he noted plaintiff's statements that he is easily irritable with others and has lost employment due to his social behavior, Dr. Bucklew also noted that plaintiff is able to interact with friends. (*Id.*) Dr. Bucklew determined that plaintiff would function best in a setting with little need for direct supervision or frequent interactions with the public, and plaintiff can adapt to changes that are predictable and introduced gradually. (*Id.*) He determined that plaintiff can concentrate on, understand, and remember unchanging, less than four step instructions, but he would not be able to carry out detailed or complex instructions. (*Id.*) Lastly, plaintiff can understand and remember a four-step command but can only carry out a single step before becoming confused. (*Id.*)

**ALJ Hearing**

On May 13, 2019, plaintiff appeared and testified to the following at a hearing before an ALJ. (Tr. 28-52.) Plaintiff has lived with his father since he was in eighth grade. He can feed himself and shower. He completed twelfth grade and has not worked since 2011, when he was a line cook. He weighs 480 pounds. His weight causes back pain. He has to lean forward or otherwise make himself comfortable while sitting in order to get the discs in his lower back to separate; he can sit with good posture for about ten minutes. Standing is painful, so he can stand in one area for around ten minutes before needing to sit down. He has a motorcycle that he rides about twice a year, when he needs to go to the store or have the motorcycle inspected. He is not taking any prescription or over-the-counter pain medications. (Tr. 31-38, 42.)

Plaintiff is always depressed to some extent, and his bipolar disorder causes him to snap at others for no reason a couple of times per day. He does not get together with friends or family. He goes to Harmony House, a service from Compass Health that helps people with disabilities gain work skills, about once a month. He does not go more often because he does not like to be around people. At home, he watches television and plays on the computer. He has suicidal thoughts two or three times per month, which last a few hours to a few days. He feels depressed three days out of a week. When he is on the computer, he needs other stimuli to which he can switch his focus, like the television. His energy is poor. He only bathes when he goes somewhere, which is a couple of times per month. (Tr. 38-43.)

Plaintiff's father testified to the following. Plaintiff cannot live on his own because he is not consistent and does not care about hygiene or cleanliness. Plaintiff has had periods of homelessness when his father has encouraged him to take care of himself. Plaintiff cannot work because he is not task-oriented or consistent. His medications have helped him with sleeping, but not with caring for himself; plaintiff's father asks him three to four times to shower because he smells bad. His father needs to remind him to perform duties around the house, like washing dishes. (Tr. 44-47.)

A vocational expert ("VE") testified to the following. Plaintiff could not perform his past relevant work. A hypothetical claimant with plaintiff's age, education, work experience, and residual functional capacity ("RFC") would be able to work as a table worker, final assembler, or sorter. Those jobs would not be available to a hypothetical claimant with plaintiff's characteristics that required re-direction to task once per day, and the hypothetical claimant would not be able to perform any competitive employment. An individual who was unable to attend work up to three times per week would not be able to maintain competitive employment. Based on her professional experience, the VE testified that lacking good hygiene affects employability; typically, an employee is given a warning the first time and is terminated the second time. (Tr. 48-51.)

### III.  DECISION OF THE ALJ

On August 30, 2019, the ALJ issued a decision finding that the plaintiff was not disabled. (Tr. 11-20.)  At Step One, the ALJ found that the plaintiff had not engaged in substantial gainful activity since December 4, 2017. (Tr. 13.)  At Step Two, the ALJ found that plaintiff had the severe impairments of morbid obesity, bipolar disorder, generalized anxiety disorder, attention deficit disorder, and degenerative disc disease. (*Id*.)  At Step Three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. 416.920(d), 416.925, or 416.926. (*Id*.)

At Step Four, the ALJ determined that plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. 416.967(a) with the following limitations:  He cannot climb ladders, ropes, or scaffolds, but can occasionally stoop, kneel, crouch, and crawl.  He should not work at unprotected heights or with hazardous machinery, and he should have less than occasional exposure to extreme temperatures or vibration.  He is limited to simple routine tasks with few changes in work setting, and he should have only occasional interactions with supervisors and coworkers but no contact with the general public.  (Tr. 15.)  With this RFC, the ALJ found that plaintiff was unable to perform past relevant work. (Tr. 18.)

At Step Five, considering the testimony of the VE, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that plaintiff can perform, including table worker, final assembler, and sorter.  (Tr. 19.)  Accordingly, the ALJ concluded that plaintiff has not been disabled under the Social Security Act.  (*Id*.)

### IV.  GENERAL LEGAL PRINCIPLES

The Court's role on judicial review of the Commissioner's decision is to determine whether the Commissioner's findings comply with the relevant legal requirements and are supported by substantial evidence in the record as a whole. *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion."

*Id*. In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the Commissioner's decision. *Id*. As long as substantial evidence supports the decision, the Court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, a claimant must prove he is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or could be expected to last for at least 12 continuous months. 42 U.S.C. § 1382c(a)(3)(A); *Pate-Fires*, 564 F.3d at 942. A five-step regulatory framework is used to determine whether an individual is disabled. 20 C.F.R. § 416.920(a)(4); *see also Pate-Fires*, 564 F.3d at 942 (describing the five-step process).

Steps One through Three require the claimant to prove (1) he is not currently engaged in substantial gainful activity, (2) he suffers from a severe impairment, and (3) his disability meets or equals a listed impairment. 20 C.F.R. § 416.920 (a)(4)(i)-(iii). If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five. Step Four requires the Commissioner to consider whether the claimant has the RFC to perform his past relevant work (PRW). 20 C.F.R. § 416.920(a)(4)(iv). The claimant bears the burden of demonstrating he is no longer able to return to his PRW. *Pate-Fires*, 564 F.3d at 942. If the Commissioner determines the claimant cannot return to PRW, the burden shifts to the Commissioner at Step Five to show the claimant retains the RFC to perform other work that exists in significant numbers in the national economy. *Id*.; 20 C.F.R. § 416.920(a)(4)(v).

## V.  DISCUSSION

Plaintiff's primary argument is that the ALJ failed to properly evaluate his RFC and that the ALJ's decision is outside the "zone of choice." *See Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008). The Court "will not disturb the denial of benefits so long as

the ALJ's decision falls within the available zone of choice." *Id.* An ALJ's decision is not outside the "zone of choice" simply because the Court might have reached a different conclusion had it been the initial finder of fact. *Id.*

In determining a claimant's RFC, the ALJ must rely on some medical evidence of plaintiff's abilities but need not rely on a specific medical opinion. *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). In addition to medical evidence, the ALJ must consider all other relevant evidence, including an individual's own description of his limitations. *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013). Although it is ultimately the ALJ's responsibility to formulate the RFC, the burden is on the claimant to establish his limitations. *Buford v. Colvin*, 824 F.3d 793, 796 (8th Cir. 2016).

First, plaintiff argues that the ALJ failed to consider how plaintiff's obesity affects his ability to sit for long periods. Plaintiff cites his testimony regarding his discomfort when sitting, noting that he can normally sit with good posture for ten minutes before needing to lean forward with his forearms on the table. (Tr. 36-37.) Plaintiff also points to Dr. Ishida's consultative exam, wherein Dr. Ishida noted that when plaintiff stands, "an apron of fat hangs down." (Tr. 532.) Plaintiff argues that this puts pressure on his back, limiting his ability to sit normally and for long periods of time.

The ALJ must "consider the limiting effects of obesity when assessing a person's RFC" in order to "show the effect obesity has on the person's ability to perform routine movement and necessary physical activity within the work environment." Social Security Ruling 19-2p. Limitations may include "exertional functions, which are sitting, standing, walking, lifting, carrying, pushing, and pulling." *Id.* While evidence exists in the record to support plaintiff's claim of limitation due to obesity, substantial evidence also exists in the record to support the ALJ's RFC determination that plaintiff could perform sedentary work. Plaintiff stated during his examination with Dr. Ishida that he can sit "forever," walk four or five miles, stand two hours, squat some, and bend. (Tr. 530-32.) The ALJ properly considered the evidence of limitation when making her determination of plaintiff's RFC.

Second, plaintiff contends that the ALJ did not assess the effect of plaintiff's poor hygiene on his ability to maintain competitive employment, despite substantial evidence to

support a finding that plaintiff does not or cannot maintain his personal hygiene due to his impairments. Plaintiff notes that his father and three physicians observed his body odor and poor personal hygiene.

The ALJ noted that plaintiff had a strong body odor during his examination with Dr. Kraushaar and that plaintiff needs reminders from his father to tend to his personal hygiene. (Tr. 17-18, 45.) In his function reports, plaintiff noted that he bathes sometimes and needs reminders to take care of his personal hygiene. (Tr. 258-59, 288-89.) Plaintiff testified that he bathes when he goes out, which is only a couple of times per month. (Tr. 42.) There is substantial evidence in the record to show that plaintiff requires reminders to care for his personal hygiene, but he can take care of his grooming needs when necessary. The ALJ properly considered the evidence when assessing plaintiff's RFC.

Third, plaintiff argues that the combination of his impairments, documented in objective medical evidence in the record, precludes him from maintaining full-time, competitive employment at any exertional level. Plaintiff contends that the ALJ inappropriately discounted his allegations of disabling pain because the objective medical evidence did not support them.

Part of the RFC determination includes an assessment of the claimant's credibility regarding subjective complaints. Using the *Polaski* factors, "[s]ubjective complaints may be discounted if there are inconsistencies in the evidence as a whole." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); *see also Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) (noting *Polaski* factors must be considered before discounting subjective complaints). The *Polaski* factors include (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions. *Polaski*, 739 F.2d at 1322; see also 20 C.F.R. § 404.1529.

Here, the ALJ considered the *Polaski* factors. The ALJ is "not required to discuss each *Polaski* factor as long as '[she] acknowledges and considers the factors before discounting a claimant's subjective complaints.'" *Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010) (quoting *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009)). The ALJ

- 11 -

noted that plaintiff can leave his home, shop, drive a motorcycle, play video games, and conduct research online. (Tr. 18, 40, 259, 273.) She also noted that plaintiff's back pain and mental health impairments are stable, and plaintiff stated that his medications are working for him. (Tr. 17-18, 547, 551, 574, 576.) The ALJ did not inappropriately discount plaintiff's allegations of disabling pain, and her determination was supported by substantial evidence in the record.

Fourth, plaintiff argues that the ALJ erroneously relied on the opinion of a non-examining expert, Dr. Bucklew, rather than the opinion of Dr. Kraushaar, the examining physician. Plaintiff contends that Dr. Bucklew's determination relied on but was inconsistent with Dr. Kraushaar's findings. Plaintiff further argues that Dr. Bucklew's narrative explanation is inconsistent with his ultimate findings of plaintiff's "moderate" ability to interact with others; understand, remember, or apply information, concentrate, persist, or maintain pace; and adapt or manage himself. Plaintiff contends that the ALJ discounted his difficulty in concentrating, persisting, and maintaining pace; he argues that the ALJ's reference to his ability to concentrate on video games is insufficient to support a moderate limitation determination.

The ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion." 20 C.F.R. § 416.920(c)(a). The most important factors that the ALJ should consider when evaluating the persuasiveness of medical opinions are supportability and consistency. *Id*. Supportability refers to the relevance of "the objective medical evidence and supporting explanations presented by a medical source" to support his or her medical opinions, and consistency refers to how consistent a medical opinion is with the evidence from other medical and nonmedical sources in the claim. 20 C.F.R. § 416.920c(c)(1)-(2).

The ALJ concluded that Dr. Kraushaar's opinion was unpersuasive because it was not supportable and was inconsistent with his observations and with the rest of the record. (Tr. 18.) Dr. Kraushaar determined that plaintiff had a marked impairment in his ability to adapt or manage himself, but the ALJ concluded that the plaintiff's impairment is moderate, noting that Dr. Kraushaar primarily based his determination on plaintiff's

reports.  (*Id.*, Tr. 542.) The ALJ found that Dr. Kraushaar's opinion regarding plaintiff's ability to adapt or manage himself was not supportable because it was not based on objective medical evidence, but on plaintiff's statements.  Additionally, Dr. Kraushaar opined that plaintiff was mildly impaired in his ability to concentrate, persist, and maintain pace; however, based on a full review of the record, the ALJ concluded that plaintiff's impairment in this area is moderate.  (Tr. 18, 542.)  The ALJ properly considered the supportability and consistency of Dr. Kraushaar's opinion with the medical and nonmedical sources in the record.

Dr. Bucklew's opinion was based on a review of the record, which included Dr. Kraushaar's evaluation, psychiatric treatment records, and statements made by plaintiff and his father. (Tr. 114-15.)  To give a complete picture of plaintiff's abilities, Dr. Bucklew distinguished plaintiff's ability to follow unchanging, less than four-step instructions from his ability to follow a four-step command.  (Tr. 120.)  Highlighting plaintiff's abilities in the two related but distinct areas supports Dr. Bucklew's finding of moderate impairment. Dr. Bucklew also opined that plaintiff would function best in a setting where there is little need for direct supervision or frequent interactions with coworkers and members of the public, which is consistent with his finding of plaintiff's moderate impairment in interacting with others. (Tr. 120.)  The ALJ's determination that plaintiff should have only occasional interactions with supervisors and coworkers but no interaction with the public is consistent with Dr. Bucklew's opinion and is supported by substantial evidence in the record.  (Tr. 15, 120, 260, 274-75, 343, 541.)

The ALJ also concluded that plaintiff has a moderate limitation with regard to concentrating, persisting, and maintaining pace, citing plaintiff's testimony that he plays video games, watches YouTube videos, and does research online. (Tr. 15.)  Plaintiff argues that the activities cited by the ALJ do not provide evidence that plaintiff can concentrate sufficiently to maintain full-time, competitive work.  In addition to the cited tasks, the ALJ noted that no problems with concentration or motivation were observed during plaintiff's mental status exams.  (*Id.*, Tr. 542, 548, 553, 572.)  The ALJ accounted for plaintiff's

limitations in concentrating, persisting, and maintaining pace by concluding that he is limited to simple, routine tasks with few changes in work setting. (*Id.*)

Fifth, plaintiff contends that the ALJ failed to cite or consider other evidence in the record. That evidence includes plaintiff's qualification for an Integrated Health Specialist at Compass Health Network; Dr. Ahmed's positive clinical findings; Dr. Ishida's positive clinical findings; Dr. Bucklew's narrative explanation of plaintiff's limitations; and Dr. Hahn's opinion that plaintiff's obesity accounts for his pain.

"Although required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000). That the ALJ did not cite plaintiff's qualification for Integrated Health Specialist or Dr. Hahn's opinion does not indicate that the ALJ failed to consider the evidence. The ALJ's decision indicates that she considered some of the evidence cited by plaintiff. Dr. Ahmed's positive clinical findings included bipolar disorder with severe depression. (Tr. 348, 350.) While the ALJ did not cite Dr. Ahmed's findings specifically, she concluded that plaintiff's severe impairments included bipolar disorder. (Tr. 13.) The ALJ also cited the results of Dr. Ishida's findings in her opinion. (Tr. 16-17, 532.) Lastly, as discussed above, the ALJ properly evaluated Dr. Bucklew's opinion.

The ALJ concluded, based on substantial evidence, that plaintiff was not disabled and that he had the RFC to perform sedentary work. The Court may not reverse the ALJ'S determination merely because substantial evidence also exists in the record that would support a contrary outcome. *Krogmeier v. Barnhart*, 294 F.3d at 1022.

## CONCLUSION

For the reasons set forth above, the decision of the Commissioner of Social Security is affirmed. An appropriate Judgment Order is issued herewith.

<pre>                                          /s/ David D. Noce          
                                     UNITED STATES MAGISTRATE JUDGE</pre>

Signed on January 11, 2022.